JAMES P. JOHNSON, APPELLANT, v. THE RIO GRANDE WESTERN RAILWAY COMPANY, RESPONDENT.

PERSONAL INJURIES — NEGLIGENCE — DOING OF USELESS THINGS— NOT REQUIRED. LOOKOUT — DUTY OF — PRESUMPTION. EXPOSURE OF PLAINTIFF — MANNER OF — ABSENCE OF PROOF—FAULT OF DEFENDANT. DANGER TO PLAINTIFF — KNOWLEDGE OF PLAINTIFF A PREREQUISITE TO NEGLIGENCE. CONTRIBUTORY NEGLIGENCE — WHEN QUESTION OF LAW FOR COURT.

1. *Personal Injuries — Negligence — Doing of Useless Things — Not Required.*

    Defendant is not guilty of negligence in failing to give warning of an approaching train when the whistle could not have been heard by plaintiff. The law does not require the doing of useless and unnecessary things in order to prevent possible injury to another.

2. *Lookout — Duty of — Presumption.*

> A lookout having been placed at the rear of a train being backed up the canyon where plaintiff was injured, in the absence of any showing to the contrary, the presumption is that he did his duty, and that the defendant railroad company performed its duty in that respect.

3. *Exposure of Plaintiff — Manner of — Absence of Proof—Fault of Defendant.*

> Where it appears that when defendant's train was 300 feet distant the plaintiff was three or four feet from the track and out of danger, and there is nothing to show how or when he got on to the track, or that he could have been seen by defendant's employees in time for them to have prevented the injury, there is no fault of defendant shown.

4. *Danger to Plaintiff — Knowledge of Plaintiff a Prerequisite to Negligence.*

> Where it is shown that plaintiff is a man of mature years and acquainted with the locality in question, that he had been warned to look out for defendant's trains, and that he did not rely on any warning from the company, it was his duty to look out for and protect himself, and the defendant can not be held guilty of negligence unless it is shown that plaintiff was seen or known to be in a place of danger in time for defendant to have stopped its train and have avoided the injury.

5. *Contributory Negligence — When Question of Law for Court.*

> Where the facts are undisputed, and but one reasonable inference can be drawn from them, the question of contributory negligence becomes a question of law for the court.

Note.— *Bunnell* v. *Rio Grande Co.*, 13 Utah, 314; *Fowler* v. *P. V. Coal Co.*, 16 Utah, 348; *Butte* v. *P. V. Coal Co.*, 14 Utah, 282. *Approved.*

(Decided March 15, 1899.)

Appeal from the seventh Judicial District, Carbon County, Hon. Jacob Johnson, *Judge.*

Action by plaintiff against defendant for damages for

personal injuries alleged to have been inflicted by the negligence of defendant.

From a judgment of non-suit plaintiff appeals.    *Affirmed.*

*Messrs. Powers, Straup & Lippman* for appellant.

. It is the duty of those in charge of a train of cars to give signals and warnings independent of and not prescribed by statute, when in the exercise of reasonable care the same ought to be given for the safety of others. *English* v. *R. R. Co.*, 13 Utah, 407; *Ives* v. *Grand Trunk R. R.* 144 U. S., 419; *Schmitz* v. *R. R. Co.*, 23 L. R. A., 250; *Erickson* v. *St. Paul & Duluth R. R.*, 41 Minn (43 N. W.), 332, 5 L. R. A., 786. .

Backing a train without observing proper lookout is negligence. *Railroad Company* v. *Shearer*, 58 Ala., 272; *Dunkman* v. *Wabash, etc., R. R.*, 95 Co., 272; *Forley* v. *Chicago, etc., R. R.*, 56 Ia., 337; *Mc Marshall* v. *R. R. Co.*, 80 Iowa, 757.

Appellant was at place where he had a right to be, and where of necessity he had to be in order to perform his work. Whether he was or was not guilty of negligence was a question of fact for the jury and not for the court. *Continental Improvement Co.* v. *Stead*, 95 U. S., 161.

Plaintiff had the right to rely that . in the running of trains and cars along and upon the track where he was at work, that respondent would use due care in giving him signals and warnings of the approach of cars, and especially that the customary and usual signals would be given. *Anderson* v. *R. R. Co.*, 8 Utah, 128; *Robinson* v. *W. P. R. R. Co.*, 48 Cal., 409; *Solon* v. *R. R. Co.*, 13 Nev., 106; *Ernst* v. *H. R. R. R.*, 39 N.Y., 64 ; *Tabor* v. *Mo. V. R. R.*, 40 Mo. 353 (2 Am. Rep., 517) ; *R. R. &*

*R. R. R.* v. *Triplet*, 38 Ill., 176; *Chi. & A. R. R.* v. *Elmore*, 67 Ill., 176; *Rawson* v. *Chi. & S. P. R. R.*, 62 Wis., 178.

Even though appellant might have been negligent in the first instance in not looking at the particular and critical moment, nevertheless, respondent was still liable for the injury if it could have prevented it by the exercise of reasonable care, after discovering the danger surrounding appellant, or if it carelessly failed to discover it when it could have done so in the exercise of ordinary care. *Esrey* v. *R. R. Co.*, 103 Cal., 541; *Hall* v. *Ry. Co.*, 13 Utah, 243; *Thompson* v. *Salt Lake R. T. Co.*, 52 Pac., 92; *Dunkman* v. *Wabash, etc., R. R.*, 4. S. W., 670; *Pickett* v. *Wilmington, etc., R. R.*, 30 L. R. A., 257; *Smith* v. *N. S. R. R.*, 5 L. R. A., 287.

Whether respondent was guilty of negligence, or whether appellant was guilty of negligence, or whether respondent, in the exercise of reasonable care, could have avoided appellant's negligence, if any, were questions of fact for the jury. *Wright* v. *So. Pac. Ry.*, 14 Utah, 383; *Wines* v. *Ry. Co.*, 9 Utah, 228; *Olsen* v. *R. Co.*, 9 Utah, 129; *Smith* v. *R. Co.*, 9 Utah, 141; *Wilson* v. *Min. Co.*, 52 Pac., 626; *Chapman* v. *Ry.*, 12 Utah, 30; *Reese* v. *Min. Co.*, 49 Pac. Rep., 824; *Ives* v. *Ry. Co.*, 144 U. S., 428; *Handley* v. *Min. Co.*, 49 Pac. Rep., 295.

*Messrs. Bennett, Harkness, Howat, Bradley & Richards* for respondent.

Under the circumstances of the case (as indicated by the evidence) the trainmen had the right to believe that plaintiff was paying attention to his own safety and to act upon that belief. *Aerkfetz* v. *Humphreys*, 145 U. S., 418; *Rangley* v. *Southern Ry. Co.*, 30 S. E., 386; *Tel-*

*fer* v. *R. Co.*, 30 N. J. L., 188, 204; *Daly* v. *Detroit, etc., Co.*, 63 N. W., 73.

The defendant is charged with negligence, and is asked to respond in damages to the plaintiff. To make a case against it, so there is a question of fact to go to the jury, there must be evidence in the case that fairly tends to prove that the defendant was in fact guilty of negligence toward the plaintiff and that the negligence shown caused, or contributed to, the plaintiff's injury. To determine the question, the jury would naturally inquire, Where was the plaintiff at the time, with reference to the row of upright timbers, and how long he was in a position that rendered him liable to be struck before he was struck? The jury could not get any information upon these subjects from the evidence. It would simply be a matter of speculation and conjecture. But the defendant's liability can not be made to rest upon speculation and conjecture; it must rest upon proof of negligence, and proof that the negligence caused the injury to the plaintiff. *Sorenson* v. *Paper Co.*, 56 Wis., 338, 341, 342; *Dubbins* v. *Brown*, 119 N. Y., 188, 194, 195; *Coswilch* v. *Oil Co.*, 122 N. Y., 118; *Cochrane* v. *Dinsmore*, 49 N. Y.; 249.

Under the circumstances of the case plaintiff was guilty of contributory negligence. *Stacklie* v. *R. Co.*, 75 N. W., 734; *Brady* v. *R. Co.*, 39 At., 186; *Missouri, etc., Co.* v. *Mosely*, 57 Fed., 923, 925; *Telfer* v. *R. Co.*, 30 N. J. L., 188; *Powell* v. *Steel Co.*, 63 N. W., 573.

Where the facts are undisputed and but one reasonable inference can be drawn therefrom, whether there was contributory negligence on the part of the plaintiff, is a question of law for the court. *Bunnell* v. *Ry. Co.*, 13 Utah, 314, 322; *Butte* v. *P. V. Coal Co.*, 47 Pac., 77; *Fowler* v. *P. V. Coal Co.*, 52 Pac., 594; *Warmell* v. *R. Co.*, 79 Me., 397; *Schevers* v. *Depot Co.*, 126 Mo., 665;

19 Utah—6.

*Hilsenback* v. *Gubring*, 30 N. E., 580; *Apsey* v. *R. Co.*,
47 N. W., 513; *Naylor* v. *Ry. Co.*, 53 Wis., 661;
*Kilroy* v. *Foss*, 161 Mass., 138.

Miner, J.

In this case the plaintiff alleges in his complaint that
the defendant negligently backed a train of cars up its
track in the cañon, to Winter Quarters where plaintiff was
employed, without keeping a sufficient or proper lookout,
and failed to ring the bell or blow the whistle, or give any
warning of the approach of the train, and failed to have
a man at the rear end, and failed to stop the train after it
was seen that the plaintiff was in danger, by reason of
which plaintiff was injured. The answer denies every
allegation of negligence charged against the defendant,
and alleges that the injuries to plaintiff, if any, were
caused by the plaintiff's own negligence in failing to use
reasonable care to avoid the train. The testimony in the
case tends to show that Winter Quarters is about a mile or
a mile and a half from Scofield; that the cañon from
Winter Quarters to Scofield is narrow; that there are many
dwelling-houses along the side of the track on both sides
from Winter Quarters to Scofield, that there is a public
road along the side of the track; the track was up a steep
grade, and at Winter Quarters was about six per cent
grade; that at Winter Quarters there were four tracks, one
south and two north of the main track, over which was
constructed a trestle work from one side to the other of
the cañon; this trestle was about twenty feet high, and
from twenty to thirty feet wide, and was supported by
12 x 12 timbers four or five feet apart and placed within
about two and a half or three feet from the main track, and
were braced by cross timbers; that hand cars loaded with

coal from the mines on both sides of the cañon were run over and upon the trestle, and were dumped through chutes into cars placed on the track underneath the trestle; the side tracks on the north connect with the main track at Parmalee's house, about 150 yards below the trestle, and the one on the south, at Three Throw, about 400 or 500 yards below the trestle; usually the train reached Scofield at about 1:30 o'clock P. M., sometimes at 4 o'clock, making two trips a day to Winter Quarters; the trains were usually run backwards up the cañon: generally, but not always, they had been in the habit of ringing the bell and whistling at Parmalee's house and at Three Throw; that sometimes they would blow the whistle and ring the bell there, and sometimes they would not; that an elevator used for crushing coal was from forty to sixty feet northeast from the trestle and made considerable noise at the time in question. On the 26th day of October, and several days prior thereto, appellant was working for the Pleasant Valley Coal Company at the trestle, shoveling waste and dirt from between the main line and timbers into a car standing on the south side track, which car was placed there by respondent for that purpose; that the crew of the train approaching him could see him about 200 yards off had he been on the track; that plaintiff did not hear the train at the time in question, and his hearing was good; that a day or two before the accident, when plaintiff was put to work there, Mr. Johnson, the foreman of the Pleasant Valley Coal Company, told appellant to look out for the trains; that the accident happened between four and five o'clock in the afternoon; that the appellant was left-handed, and could not shovel right handed, and therefore had to stand with his back down the cañon, facing opposite the direction the train came; that he was at work under the trestle,

about even with the first timbers or a little past the south side of the main line, and near the edge from the direction the train came; that while at work appellant had watched for the train and looked back every minute or so; that on the 26th day of November, between four and five o'clock, respondent backed a train of from eight to twelve cars up the cañon at a pretty good rate without blowing the whistle or ringing the bell, and struck and injured the plaintiff; that the elevator was from forty to sixty feet from the trestle, and forty feet north from the main track; that the elevator was used to carry coal from the chute where it was dumped; that Three Throw is about 500 feet east of the trestle; that there is a curve in the track half way between Three Throw and the trestle; that when struck plaintiff was on the south side of the main track close to the trestle shoveling slack between the main track and the south side of the track into coal cars standing on the south track; this slack fell from the cars above; the main track and south track were seven feet apart; the slack plaintiff was shoveling was between these two tracks; the coal cars projected from track two feet; that between the cars, if on the tracks, there would be a distance of about three feet in the clear.

Witness Bearnson testified that just before Johnson was struck, he crossed the track were Johnson was working, and the train was then 300 yards away, and Johnson could have seen the train if he had looked, as he was then under the edge of the trestle, back three or four feet from the main track. When placed at work a day or two before the accident, plaintiff was told by his employer to look out for the train coming up the track. A brakeman was on the end of the flat car as it approached the place where Johnson was located. This brakeman was in plain sight, but witness did not see him make any

motions or signs to any one.    It required about one hour each day to shovel off the slack between the tracks.

Thompson, a witness for the plaintiff, testified that a person would have to be thirty or forty feet down the track from the trestle work away from where the plaintiff stood before he could hear the train whistle on account of the noise.

The witness Bearnson testified that a man could hear the whistle when blown 500 yards down the track if not employed working at the time.    On motion of the defendant, the court granted a non-suit.    From this judgment of non-suit the plaintiff appeals, alleging error on the grounds, 1st., that defendant failed to ring the bell or blow the whistle or give any warning of the approaching train; 2d, that it failed to have a man at the rear end of the train as a lookout; 3d, that it failed to stop the train after it was seen that the plaintiff was in danger; 4th, that it backed the train of cars up the cañon upon the track upon which plaintiff was at work without a sufficient or proper lookout.

After stating the facts, *Miner, J.* delivered the opinion of the court.

The testimony shows that no custom prevailed on the part of the company to ring the bell or blow the whistle at each approach of the train, although it appears that the whistle was blown sometimes when the train approached that locality, from three to five hundred yards away.    It also appears that had this precaution been taken the plaintiff would not have heard such signals at the point where he was working, when at work, on account of the noise made by the elevator crushing coal.    In order to hear the whistle a person would have to be thirty or forty feet below the trestle.    There was consequently no negligence shown on the part of the defendant in omitting

to blow the whistle or ring the bell. Under the circumstances shown, the defendant owed the plaintiff no duty in this respect. The law does not require the doing of useless and unnecessary things in order to avoid possible injury to another.

2d. The testimony shows that the company had a brakeman on the rear car as it approached the place where the plaintiff was at work, but such brakeman was not seen to make any signals or motions to any one at the time when the train was some distance away from the plaintiff. There was no occasion for the brakeman to make signals or signs, unless he could see that the plaintiff was in danger. The plaintiff may have been standing between the timbers and the train so as not to be observed. Had he been upon the track he could have been seen. However, the plaintiff was shown to be about three feet south from the main track when the train approached him, as testified to by Thompson: If the plaintiff was looking he could have seen the train; and if he was not looking, he would not have seen the motions of the brakeman on the outlook.

The plaintiff testified that if the brakeman had shouted to him he might not have heard him when the train approached, as there was so much noise, and that he did not realize that any one shouted. There being a man in the lookout, in the absence of anything to the contrary, the presumption is that he did his duty, and that the company performed its duty in that respect.

3d. The testimony also tends to show that the main track was seven feet from the side track on which the empty flat cars stood, into which the plaintiff was shoveling slack. This car projected two feet from the track, leaving five feet between the main track and the flat car. The slack fell from the cars above between the tracks

below, so there was no necessity for the plaintiff to go upon the main track to shovel coal into the flat car. When the train was 300 feet away backing up toward the place where the plaintiff was injured, the plaintiff was three or four feet from the main track, and not in a place of danger.    When the plaintiff left that place does not appear, and there is no testimony to show that plaintiff was seen, or could be seen by defendant's employees to be in a place of danger in time for them to prevent the injury, after his situation was known.    Neither is it shown that plaintiff was not hidden from view of the man on the lookout by the upright timber supporting the trestle. Under these circumstances the defendant was not shown to have been in fault.

4th. It also appears that the plaintiff was a man of mature years, and acquainted with the locality in question, as well as the manner of running of the trains, and did not rely on any warning from the company, nor had the company been in the habit of giving him warning of the approach of its trains.    When plaintiff was placed at work in this locality a day or two before the injury, he was told by the foreman, who put him at work, to look out for the trains coming up the cañon.    The trains came up twice a day, and plaintiff was only required to work about one hour each day.    It was therefore as much the duty of the plaintiff to be on the lookout for the trains, as it was to perform the work assigned him. There was nothing in the situation to distract his attention, as might have been the case had he charge of moving machinery.    He had plenty of opportunity to look and watch for approaching trains, and it was his duty to use his senses to protect himself from the danger arising from such an employment.    His duty did not call him upon the main track, and the defendant had the right to

infer that he would not unnecessarily place himself in danger.

The defendant can not be held guilty of negligence in backing its train in the manner it did, unless it was shown that the plaintiff was seen or known to be in a place of danger and liable to be injured by moving trains in time for the defendant to have stopped the train so as to avoid injury. The plaintiff was struck upon the side of his head and shoulders. The location of the injury indicated that he was partly facing the track, and by the timely use of his eyes he could have discovered the train coming down the three hundred yards of track in time to have placed himself out of danger. It was a part of his duty to watch for the train. In performing his work it was not necessary for him to be within reach of the moving train.

We are of the opinion that there was no evidence to warrant the court in submitting the case to the jury. Nor was there any evidence to warrant the jury in finding that the defendant failed to perform any duty it was owing to the plaintiff, or was guilty of any negligence that caused or contributed to the cause of the injury complained of. On the contrary, the evidence shows that the plaintiff failed to exercise reasonable and ordinary care for his own safety. Where facts are undisputed and but one reasonable inference can be drawn from them, whether there was contributory negligence on the part of the plaintiff, is a question of law for the court. *Bunnell* v. *The Rio Grande Co.*, 13 Utah, 314; *Fowler* v. *Pleasant Valley Coal Co.*, 52 Pac. Rep., 594; *Butte* v. *Pleasant Valley Coal Co.*, 47 Pac. Rep., 77.

The judgment of the District Court is affirmed, with costs.

BARTCH, C. J., and BASKIN, J., concur.